IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SUZANNA JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 22-914-SRF |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Angela Pinto Ross, Doroshow, Pasquale, Krawitz & Bhaya, Wilmington, DE.

 Attorney for Plaintiff.

David C. Weiss, United States Attorney; Anne von Scheven, Special Assistant United States Attorney, District of Delaware, Office of Program Litigation, Social Security Administration, Baltimore, MD; Brian C. O'Donnell, Associate General Counsel, Social Security Administration, Baltimore, MD.

 Attorneys for Defendant.

## **MEMORANDUM OPINION**

September 29, 2023
Wilmington, Delaware

FALLON, U.S. MAGISTRATE JUDGE:

Plaintiff Suzanna Johnson ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) against defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration ("Commissioner"), seeking judicial review of the Commissioner's final decision denying Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively, 42 U.S.C. §§ 401–433 and 1381-1383f.[1] (D.I. 2) Currently before the court are cross-motions for summary judgment filed by Plaintiff and the Commissioner.[2] (D.I. 14; D.I. 17) For the reasons set forth below, Plaintiff's motion for summary judgment is DENIED and the Commissioner's cross-motion for summary judgment is GRANTED.

I.  BACKGROUND

A. Procedural History

Plaintiff filed applications for DIB and SSI on November 11 and 12, 2019, alleging disability as of January 5, 2017 due to degenerative disc disease of the lumbar spine status-post surgeries, lumbar radiculopathy, chronic pain syndrome, bilateral carpal tunnel syndrome, cervical radiculopathy, left foot drop, tremors, depression, asthma, and attention deficit disorder ("ADD"). (D.I. 11 at 235-63, 291; D.I. 11-1 at 194-95) Plaintiff's claims were denied initially and upon reconsideration. (D.I. 11 at 87-123)

At Plaintiff's request, an administrative law judge ("ALJ") held a hearing on February 23, 2021. (*Id.* at 40-68) The ALJ issued an unfavorable decision on April 20, 2021, finding that

---

[1] On August 11, 2022, the parties consented to the jurisdiction of the undersigned judicial officer to conduct all proceedings in this matter through final judgment, pursuant to 28 U.S.C. § 636(c). (D.I. 9)
[2] The briefing on the pending motions is found at D.I. 15, D.I. 18, and D.I. 19.

Plaintiff could perform a reduced range of sedentary work. (*Id.* at 24-34) The Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 7-9)

Plaintiff brought this civil action challenging the ALJ's decision on July 8, 2022. (D.I. 2) Plaintiff filed the pending motion for summary judgment on December 6, 2022, and the Commissioner cross-moved for summary judgment on February 6, 2023. (D.I. 14, 17) The motions are now ripe for resolution.

### B. Medical History

Plaintiff was 32 years old on her alleged disability onset date of January 5, 2017. (D.I. 11 at 69) The ALJ found that the Plaintiff had the following severe impairments: degenerative disc disease, left drop foot, carpal tunnel syndrome, and obesity. (*Id.* at 26) The ALJ concluded that Plaintiff's asthma and ADD were not severe. (*Id.* at 27) The court focuses its summary of the medical evidence on the records relevant to Plaintiff's lumbar spine impairment and her use of a hand-held assistive device to aid in walking, which are the focus of Plaintiff's appeal. (D.I. 15 at 13-19)

In February of 2014, years prior to her disability onset date, Plaintiff sustained injuries in a car accident. (D.I. 11-1 at 598) Plaintiff underwent an MRI of her lumbar spine in June of 2014 and again in March of 2015. (*Id.* at 177, 231) The images revealed an annular tear and left paracentral disc herniation at L5-S1, with no central canal or foraminal stenosis. (*Id.*) All other findings were normal and unremarkable. (*Id.*)

Plaintiff received treatment for chronic back and neck pain in early 2016. (D.I. 11-1 at 33-83) These treatment records indicate that Plaintiff experienced constant, moderate to severe pain in her back and tingling down her leg, but analgesic medication allowed her to function in

her daily activities and continue working full time. (*Id.* at 33, 36, 39, 57, 74) The pain was exacerbated by too much movement, working, and daily activity. (*Id.*) A lumbar discography in August of 2016 revealed a high grade posterior annular tear and disc protrusion at the L5-S1 level. (*Id.* at 148, 192, 219-20) Her treating physicians, Dr. Arnold Glassman and Dr. Bikash Bose, recommended surgical management and expressed concern about her use of analgesic medication on a long-term basis. (*Id.* at 42, 60, 77, 83, 192)

On January 6, 2017, one day after her alleged disability onset date, Plaintiff underwent an endoscopic discectomy and facetectomy at L5-S1, performed by Dr. Frank Falco. (D.I. 11-1 at 171, 188, 255) Her pain levels worsened after the surgery, with increased left leg pain and numbness going down to her foot. (*Id.*) Her ability to stand or put pressure on her foot was severely limited, and she experienced muscle cramps and weakness. (*Id.*) By March of 2017, Plaintiff's treatment notes with Dr. Falco indicate she was no longer using a wheelchair and had started using a walker, her pain medications were providing adequate pain relief, and she wanted to return to work as a certified nursing assistant ("CNA"). (*Id.* at 255-56, 598) However, she resigned as a CNA in April of 2017 due to her continuing low back pain radiating down her left leg. (*Id.* at 250)

Plaintiff stopped going to her physical therapy appointments in June of 2017. Treatment records from Dr. Falco in July indicate that she walked with a rolling walker, and her gait was smooth and coordinated. (D.I. 11-1 at 235-37, 574) Other records from the same month by Dr. Pankaj Garg described her gait as "symmetric, non-antalgic," with erect posture and no mention of a walker or other assistive device. (*Id.* at 322) During a visit with Dr. Garg in October of 2017, Plaintiff requested a prescription for a Rollator walker with a seat, as the walker she had been using was over the counter. (*Id.* at 316) The following month, Plaintiff walked with a

4

walker during her visit. (*Id.* at 313) Records from Dr. John Fenice and Dr. Robert Elliott during this period indicate that she sometimes had an antalgic gait, and other times her gait was normal. (*Id.* at 287, 292; D.I. 11-2 at 80, 82)

In January of 2018, Plaintiff underwent a myelogram and CT scan, which revealed minimal spondylolisthesis and disc bulges at the L4-5 and L5-S1 levels. (D.I. 11-1 at 324) In accordance with these test results, Dr. Bose recommended a trial of spinal cord stimulation instead of direct surgery. (*Id.*) Dr. Elliott's examination notes from March of 2018 state that Plaintiff dragged her left foot as she walked, and she required the use of a walker to ambulate. (*Id.* at 332-33) A subsequent MRI in May of 2018 showed multilevel degenerative disc disease, narrowing of the left lateral recess, and moderate left-sided foraminal narrowing at L5-S1. (D.I. 11-2 at 106-07)

On June 27, 2018, Plaintiff underwent L5-S1 decompression and fusion surgery performed by Dr. Elliott. (D.I. 11-2 at 194-95) Two weeks after her surgery, she presented in a wheelchair and complained of L5 pain and weakness. (*Id.* at 152) Three months after surgery, she reported improvement in her mechanical lower back pain but continued to experience pain over the left sacroiliac ("SI") joint radiating into her leg, and she had difficulty walking without a walker. (*Id.* at 193) Dr. Elliott indicated that "some of her deficits may be permanent." (*Id.*) In December of 2018, treatment records indicate that Plaintiff's lower back pain had improved but she continued to have persistent left SI joint pain, and she had significantly escalated her use of pain medication since her surgery in June. (*Id.* at 333) She continued to use a wheelchair or walker for mobility. (*Id.* at 333-34)

During a medical visit with nurse practitioner Mary High for treatment of ear pain and a cough in February of 2019, Plaintiff's medical notes indicate that she exhibited a normal gait but

5

ambulated with a walker. (D.I. 11-1 at 338) In June of 2019, Plaintiff reported severe, radiating pain in her lower back and requested additional Tramadol to control the pain. (*Id.* at 342) She exhibited a normal gait, with no indication that she used an assistive device during her June visit. (*Id.* at 346)

On June 20, 2019, Plaintiff underwent a consultative examination with Dr. Shawn Naqvi. (D.I. 11-1 at 348-53) Dr. Naqvi found no palpable tenderness or spasms and no palpable bony deformity in Plaintiff's lumbar spine, although Plaintiff exhibited a reduced range of motion in her lumbar spine. (*Id.* at 349, 352) Loss of sensation was noted in Plaintiff's left leg and the dorsal aspect of her foot. (*Id.* at 350) However, Plaintiff's gait was normal, her straight leg raising tests were negative bilaterally, and no asymmetry, atrophy, or reduced strength was observed. (*Id.* at 350-51) Plaintiff was tested both with and without a cane during her examination, and Dr. Naqvi confirmed she had a normal swing and stance and a normal gait upon examination. (*Id.* at 353) Dr. Naqvi concluded that Plaintiff did not require the use of an assistive device for ambulation. (*Id.*)

Plaintiff's treatment notes during the fall of 2019 indicate that she required the use of a cane or walker to ambulate, but her gait was within normal limits. (D.I. 11-3 at 356, 360) She exhibited a tremor in her left leg and bilateral paralumbar tenderness. (*Id.* at 360)

In April of 2020, Plaintiff obtained an initial pain management evaluation from Dr. Selina Xing. (D.I. 11-1 at 448-53) The examination notes indicate Plaintiff exhibited an antalgic gait while using her walker, but her balance was intact. (*Id.* at 450) She had tenderness in her lumbar spine and SI joint, and her range of motion in her lumbar spine was limited while she held onto her walker for support. (*Id.*) Dr. Xing ordered an MRI of her lumbar spine and physical therapy. (*Id.* at 453) The MRI disclosed no residual or recurrent disc herniation and no

spinal canal or neural foraminal narrowing at L5-S1. (*Id.* at 525) Dr. Xing's subsequent treatment records from February of 2021 show no marked improvement in Plaintiff's condition and are consistent with the findings made in 2020. (D.I. 11-2 at 390-99)

### C. Testimony

On March 7, 2020, Plaintiff provided written testimony in the form of an adult function report which described the impact of her medical conditions on her activities of daily living. (D.I. 11 at 309-16) Plaintiff reported difficulty walking without an assistive device due to severe low back pain, tremors, and a loss of feeling through her left leg and foot. (*Id.* at 309, 315) Despite these limitations, Plaintiff was able to care for her five children by helping them get ready for school, preparing breakfast, assisting with homework, making sure the children were bathed, and administering their medication. (*Id.* at 309-10) Plaintiff needed to sit down to bathe and dress herself, and her household chores were limited to tasks that did not require lengthy periods of standing, such as folding clothes, preparing simple meals, and washing dishes for short periods. (*Id.* at 310-11) She reported that she went outside almost every day, and she could drive a car for short distances. (*Id.* at 312)

At the hearing before the ALJ on February 23, 2021, Plaintiff testified that she has difficulty climbing the stairs in her townhouse at night and she often sleeps on the lower level. (*Id.* at 50) She reported that her pain prevents her from leaving the house two to three times each week, and when she does leave the house, she uses a walker, cane, or wheelchair to assist with her mobility. (*Id.* at 53-54) Plaintiff requires frequent changes in position to manage her pain. (*Id.* at 56-57)

The ALJ posed two base hypotheticals to the vocational expert ("VE"). First, the ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and experience

who:

> is able to perform light work, occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crouch, crawl, tolerate occasional exposure to extreme heat, extreme cold, humidity, wetness, fumes, odors, dust, gases, poor ventilation, vibrations, and hazards such as moving machinery or unprotected heights. If the individual is able to finger, handle, and reach frequently, would such an individual be able to perform the claimant's past work?

(*Id.* at 63) The VE testified that such a hypothetical individual would not be able to perform Plaintiff's past work as a CNA, but she could perform Plaintiff's past work as a teacher's aide. (*Id.*) The VE also stated that the hypothetical individual could perform the positions of routing clerk, information clerk, and retail marker in the national economy. (*Id.* at 64)

For the next base hypothetical, the ALJ asked the VE to consider a hypothetical individual with all of the previously listed limitations, who can perform work only at a sedentary exertional level. (*Id.*) The VE responded that such an individual could perform work as a sorter, a table worker, or an information clerk in the national economy. (*Id.* at 65)

The ALJ then proceeded to ask about the impact of various additional limitations on the hypothetical individual's ability to perform the listed occupations at the light and sedentary exertional levels. In response, the VE indicated that the hypothetical individual could perform all of the listed positions despite a need to move from a seated to standing position and vice versa for up to five minutes every hour. (*Id.*) The VE further indicated that a hypothetical individual who required the use of a single point cane for ambulation would not be able to perform the light work positions, but could still perform the sedentary positions. (*Id.* 65-66) In response to questioning by Plaintiff's counsel, the VE testified that an individual who could not sit, stand, and walk for eight hours or would be absent on a consistent but unscheduled basis two or more times per month would not be able to maintain any kind of full-time work. (*Id.* at 66)

8

### D. The ALJ's Findings

Based on the medical evidence in the record and the testimony by Plaintiff and the VE, the ALJ determined that Plaintiff was not disabled under the Act for the relevant time period from the January 5, 2017 disability onset date through the date of the ALJ's written decision on April 20, 2021. (D.I. 11 at 34) The ALJ found, in pertinent part:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2022.

2. The claimant has not engaged in substantial gainful activity since January 5, 2017, the alleged onset date (Exs. B9D, B12D, 20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease, left drop foot, carpal tunnel syndrome, and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She can tolerate occasional exposure to vibrations and hazards. She can perform frequent fingering, handling, and reaching.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant . . . was 32 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a

      finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 5, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(*Id.* at 26-34)

## II. STANDARD OF REVIEW

Judicial review of the ALJ's decision is limited to determining whether substantial evidence supports the decision. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence means enough relevant evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Pearson v. Comm'r of Soc. Sec.*, 839 F. App'x 684, 687 (3d Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). When applying the substantial evidence standard, the court "looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek*, 139 S. Ct. at 1154 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The threshold for satisfying the substantial evidence standard is "not high[,]" requiring "more than a mere scintilla" of evidence. *Id.*

## III. DISCUSSION

### A. Disability Determination Process

Title II of the Social Security Act "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Title XVI of the Social Security Act

10

provides for the payment of disability benefits to indigent persons under the SSI program. 42 U.S.C. § 1382(a). A disability is defined for purposes of SSI and DIB as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is only disabled if the impairments are so severe that they preclude a return to previous work or engagement in any other kind of substantial gainful work existing in the national economy. *Id.* at § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

The Commissioner must perform a five-step analysis to determine whether a person is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). If the Commissioner makes a finding of disability or non-disability at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)(i). At step one, the Commissioner determines whether the claimant is engaged in any substantial gainful activity. *See id.* at §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a severe combination of impairments. *See id.* at §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant's impairments are severe, at step three, the Commissioner compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See id.* at §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Plummer*, 186 F.3d at 428. When a claimant's impairment or its equivalent matches a listed impairment, the claimant is presumed disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's

impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See id.* at §§ 404.1520(e), 416.920(e).

At step four, the ALJ considers whether the claimant retains the residual functional capacity ("RFC") to perform past relevant work. *See id.* at §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Plummer*, 186 F.3d at 428. A claimant's RFC "measures the most she can do despite her limitations." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (quoting 20 C.F.R. § 404.1545(a)(1)) (internal quotations and alterations omitted). The claimant bears the burden of demonstrating the inability to return to past relevant work. *See Plummer*, 186 F.3d at 428

If the claimant is unable to return to past relevant work, at step five, the Commissioner must demonstrate that the claimant's impairments do not preclude an adjustment to any other available work. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g); *Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. *See id.* The ALJ often seeks the VE's assistance in making this finding. *See id.*

### B. Whether the ALJ's Decision is Supported by Substantial Evidence

Plaintiff argues that the hypothetical posed by the ALJ to the VE failed to adequately account for her credibly established limitations. (D.I. 15 at 13) Specifically, Plaintiff alleges that the ALJ did not properly consider Plaintiff's use of an assistive device for walking and did not account for Plaintiff's inability to sustain work on a regular and continuing basis. (*Id.* at 14-18)

### 1. Use of an assistive device

Plaintiff contends that the ALJ erred by failing to account for her use of a cane or walker for ambulation and balance in the hypothetical posed to the VE or in the resulting RFC assessment. (D.I. 15 at 14-15) According to Plaintiff, the ALJ's failure to do so amounts to clear error because substantial evidence supports the medical necessity of Plaintiff's walker. (*Id.* at 15-16)

Social Security Ruling 96-9p provides guidance on determining a claimant's residual functional capacity when the claimant uses a medically required hand-held assistive device:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of the case. For example, if a medically required hand-held assistive device is needed for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9p, 1996 WL 374185, at *7. Under this guidance, the ALJ need not account for the use of an assistive device in the RFC assessment unless the device is medically required, as shown by medical documentation. *Id.*; *see Mundo v. Kijakazi*, 2023 WL 2632810, at *5 (M.D. Pa. Mar. 24, 2023). The Third Circuit has explained that a doctor's prescription for an assistive device, accompanied by a checked box that the assistive device is "medically required for ambulation," is insufficient to meet the burden absent further description of the circumstances for which the assistive device is needed. *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002).

If the claimant makes a threshold showing of medical necessity, then the ALJ must directly address the evidence concerning the claimant's use of the assistive device. *Figueroa v. Kijakazi*, 2023 WL 2432909, at *10 (M.D. Pa. Mar. 9, 2023). However, if the documentation

13

provided by the claimant is insufficient, "the ALJ need not include the use of an assistive walking device in the RFC assessment." *Rodkey v. Berryhill*, C.A. No. 17-784-MEM, 2019 WL 1781541, at *6 (D. Del. Apr. 23, 2019) (citing *Helms v. Berryhill*, 2017 WL 3038154, at *8 (E.D. Va. 2017), *adopted by* 2017 WL 3032216 (E.D. Va. 2017)). "Courts have held claimants to a high burden in supplying the appropriate documentation[,]" including an unambiguous opinion from a physician outlining the circumstances in which the assistive device is medically necessary. *Id.* (citations omitted).

Here, Plaintiff has not pointed to sufficient evidence in the record to demonstrate that her walker was medically necessary such that the ALJ was required to provide for it in the RFC assessment. The evidence in this case is comparable to that in *Howze*—a doctor wrote a prescription for an assistive device, and the claimant was observed using the assistive device. 53 F. App'x at 222. Plaintiff's treatment records show that she affirmatively requested a prescription grade walker from Dr. Garg in October of 2017 to replace the over-the-counter walker she had been using. (D.I. 11-1 at 316) Likewise, the claimant's doctor in *Howze* provided him with a "script" for a cane to address left-leg weakness that caused him to lose balance and fall. 53 F. App'x at 222. The record in *Howze* also contained multiple references to the fact that the claimant used a cane. *Id.* Nonetheless, the Third Circuit found no error in the ALJ's failure to address the claimant's use of the cane because there was a lack of medical documentation establishing the need for the cane and describing the circumstances for which it was needed. *Id.* Similarly, the record in this case is devoid of specifics addressing whether Plaintiff is required to use the walker all the time, periodically, or in certain circumstances as required under SSR 96-9p.

14

In support of her motion, Plaintiff points to numerous treatment records documenting her use of a walker or cane during her medical appointments. (D.I. 15 at 15-16; D.I. 11-1 at 287, 300-01, 316, 331, 338, 342-47, 450-51, 490, 497, 504, 511, 576-77; D.I. 11-2 at 22, 175, 333-34, 393, 403-04, 411) But these observations do not establish that the assistive device was medically required, and they ignore other records showing that Plaintiff could walk with a normal gait without an assistive device. *See Brooks v. Saul*, 2019 WL 7048794, at *6-7 (E.D. Pa. Dec. 23, 2019) ("The medical evidence showing Plaintiff used a cane on occasion does not establish the cane was medically required under SSR 96-9p[.]"); *Zuna v. Colvin*, 2017 WL 1215458, at *15 (M.D. Pa. Mar. 3, 2017) ("[A]n observation that Plaintiff was using a cane is not equivalent to an opinion that she medically required a cane."). During a consultative examination in June of 2019, Dr. Naqvi tested Plaintiff with and without a cane and determined that no assistive device was needed. (D.I. 11 at 31; D.I. 11-1 at 353) The ALJ's decision also cites several treatment records from multiple doctors throughout the relevant period establishing that Plaintiff exhibited a normal gait without the use of an assistive device:

| TREATMENT DATE | TREATING DOCTOR | FINDING | RECORD CITATION |
|---|---|---|---|
| 2/28/2017 | Dr. Falco | Gait coordinated and smooth | D.I. 11-1 at 168 (Ex. B4F at 22) |
| 7/21/2017 | Dr. Garg | Gait is symmetric, non-antalgic | D.I. 11-1 at 322 (Ex. B6F at 28) |
| 7/24/2019 | Dr. Fenice | Mobility/gait within normal limits | D.I. 11-1 at 367 (Ex. B10F at 4) |
| 2/6/2020 | NP Mary High | Mobility/gait within normal limits | D.I. 11-1 at 376 (Ex. B10F at 13) |

Plaintiff also contends the ALJ fails to specifically address why the use of an assistive device was rejected, noting that "the ALJ never stated that the walker/cane was not medically necessary, only there were times that she could ambulate without it." (D.I. 19 at 3) But the ALJ "need not employ particular 'magic' words" in setting forth the reasons for the decision. *See*

15

*Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 & n.3 (3d Cir. 2004)). Here, the ALJ described the objective medical findings regarding Plaintiff's normal gait without the use of a walker, as well as Plaintiff's own statements about her ability to walk without a walker. (D.I. 11 at 30-31) This evidence led the ALJ to conclude that while "the medical evidence of record supports that . . . the claimant sometimes uses a walker, she is able to ambulate without it." (D.I. 11 at 30-31) It can reasonably be inferred from this conclusion that the ALJ found Plaintiff's use of an assistive device was not medically necessary, and this conclusion is supported by substantial evidence. Plaintiff's comparison of the ALJ's decision in this case to the decision in *Snider v. Saul* is therefore distinguishable, because the ALJ in *Snider* did not "provide an explanation as to why Snider's use of a cane was rejected." C.A. No. 19-1907-MN-SRF, 2021 WL 3090870, at *9 (D. Del. July 22, 2021)).

Plaintiff argues that the ALJ placed too much emphasis on Dr. Naqvi's one-time consultative exam because it ignores the general consensus among six treating sources about Plaintiff's need for an assistive device. (D.I. 15 at 16) As previously discussed, however, no such consensus exists in Plaintiff's medical records, and Plaintiff's own statements suggest that she did not always require the use of an assistive device. (D.I. 11-1 at 574, 582) Absent an unambiguous opinion from a physician outlining the circumstances in which Plaintiff's walker is medically necessary, the ALJ did not err in failing to include the use of an assistive device in the RFC assessment. *See Rodkey*, 2019 WL 1781541, at *6 (citing cases from the Third, Seventh, and Tenth Circuits); *see also Kline v. Kijakazi*, 2023 WL 2692398, at *8 (M.D. Pa. Mar. 29, 2023).

16

### 2. Capacity to sustain work

Next, Plaintiff argues that the ALJ erred by failing to account for the frequency of Plaintiff's medical treatment and the extent of the limitations in her self-reported activities of daily living, which negatively impact her ability to sustain work. (D.I. 15 at 17-18) In support, Plaintiff relies on the opinion of Dr. Fenice, who indicated that Plaintiff was likely to miss four days of work per month and would therefore be unable to sustain even sedentary work. (*Id.*)

In making an RFC determination, the ALJ must "assess the nature and extent of [the claimant's] physical limitations" and then determine the claimant's RFC for work activity "on a regular and continuing basis." 20 C.F.R. § 404.1545(b); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1. Here, the ALJ accounted for all of Plaintiff's credibly established limitations in determining her RFC.

Plaintiff makes only general references to the record, without citations, in support of the argument that her medical treatment would interfere with her ability to sustain work. (D.I. 15 at 17-18) She argues that the ALJ was required to consider the frequency of her medical appointments without making any representations about the frequency of those appointments herself. (*Id.*) The only case she cites in support of her position is *Kangas v. Bowen*, 823 F.2d 775 (3d Cir. 1987), the facts of which are distinguishable. In *Kangas*, the claimant was hospitalized six times in a sixteen-month period, and he required a one to two-week recovery period at home after each hospitalization. *Id.* at 777-78. There is no comparable record of hospitalizations or other medical treatment in the present case.

Plaintiff also cites the opinion of Dr. Fenice in support of her position that she cannot sustain work on a regular and continuing basis. (D.I. 15 at 17-18) But the ALJ expressly

17

considered and rejected Dr. Fenice's opinion that Plaintiff could sit, stand, and walk for less than two hours in an eight-hour workday and would require unscheduled ten-minute breaks every hour. (D.I. 11 at 32) Specifically, the ALJ determined that the opinion was not consistent with objective findings that Plaintiff did not require an assistive device and had no disc herniation, spinal canal narrowing, or neural foraminal narrowing in her more recent MRI results. (*Id.*) The ALJ further explained that Plaintiff's self-reports of improvement following surgery and activities of daily living did not support the degree of limitation opined by Dr. Fenice. (*Id.*) By considering all of Plaintiff's credibly established limitations and assessing an RFC of sedentary work, the ALJ adequately considered Plaintiff's ability to sustain work on a regular and continuing basis.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED (D.I. 14), and the Commissioner's cross-motion for summary judgment is GRANTED (D.I. 17). An Order consistent with this Memorandum Opinion shall issue.